779 F.2d 974
 MAXUM FOUNDATIONS, INC., Appellee,
v.
SALUS CORPORATION and United Pacific Insurance Company, Appellants,
and
8201 Corporation, Third Party Defendant.
MAXUM FOUNDATIONS, INC., Appellee,
v.
SALUS CORPORATION and United Pacific Insurance Company, Appellants,
and
8201 Corporation, Third-Party Defendant.
MAXUM FOUNDATIONS, INC., Appellant,
v.
SALUS CORPORATION and United Pacific Insurance Company, Appellees,
and
8201 Corporation, Third-Party Defendant.
MAXUM FOUNDATIONS, INC., Appellee,
v.
SALUS CORPORATION and United Pacific Insurance Company, Appellants,
and
8201 Corporation, Third-Party Defendant.
MAXUM FOUNDATIONS, INC., Appellant,
v.
SALUS CORPORATION and United Pacific Insurance Company, Appellees,
and
8201 Corporation, Third-Party Defendant.
 Nos. 84-2377, 85-1069, 85-1423, 85-1653 and 85-1654.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 9, 1985.
Decided Dec. 18, 1985.
 
 Edgar T. Bellinger (Elena W. King, Zuckert, Scoutt, Rasenberger & Johnson, Washington D.C., Alan B. Croft, Hazel, Beckhorn & Hanes, Fairfax, Va., on brief), for appellants.
 Douglas L. Patin (Andrew W. Stephenson, Washington, D.C., Blake D. Morant, Braude, Margulies, Sacks & Rephan, Chartered, P.C., Washington, D.C., on brief), for appellee.
 Before PHILLIPS, MURNAGHAN and WILKINSON, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Salus Corporation (Salus) and United Pacific Insurance Company (United Pacific)[1] appeal the refusal of the district court to stay or dismiss an action brought against Salus by Maxum Foundations, Inc. (Maxum), and all parties appeal a finding by the district court that they reached an enforceable agreement to settle the claims involved in this proceeding.[2] Salus, a general contractor, challenges the district court's ruling that an arbitration agreement was not incorporated into the contract between Salus and Maxum, a subcontractor. Neither Salus nor Maxum agrees with the conclusion of the district court that a settlement was reached as to the material matters at issue between the parties.
 
 
 2
 We conclude that the district court erred in its determination that the contract between Salus and Maxum did not include an agreement to arbitrate, and also vacate the court's finding of a settlement agreement. We reverse the judgment of the district court and remand with a direction that this action be stayed pending arbitration of the claims between the parties.
 
 
 3
 * On July 27, 1984, Maxum commenced this breach of contract action against Salus in the United States District Court for the Eastern District of Virginia. Maxum filed a second amended complaint on August 22, 1984, in which it added as a defendant United Pacific, Salus' surety. Salus filed an answer on September 24, in which it denied liability and asserted a counterclaim against Maxum for breach of contract. On October 4, Salus filed a third-party complaint against 8201 Corporation (8201), the owner of the project to which the subcontract between Salus and Maxum related, seeking indemnification for any sums adjudged against Salus in favor of Maxum, and asserting damages for breach of the general contract.
 
 
 4
 Both Salus and Maxum proceeded to conduct discovery. Maxum noticed several depositions, made requests for document production by Salus and third parties connected to the project, and propounded a set of interrogatories to Salus. Salus attended the depositions noticed by Maxum, and received copies of many of the documents produced at those depositions.
 
 
 5
 Subsequent to initiation of discovery by Maxum, the district court entered a scheduling order that established a discovery cutoff date of December 14 and set the date of the pretrial conference for December 20. Salus later noticed three depositions, and propounded a set of fifteen interrogatories and twelve document production requests.
 
 
 6
 On November 5, 8201 moved to dismiss the third-party complaint, relying on the arbitration clause contained in its contract with Salus. This motion to dismiss was scheduled for hearing on November 30. On November 15, Salus moved for dismissal of Maxum's complaint, alleging that the subcontract also provided for arbitration. Five days later, on November 20, Maxum filed responses to Salus' interrogatories and document requests. On November 26, Maxum filed its response to Salus' motion to dismiss, in which it asserted that the subcontract did not provide for arbitration and that Salus had waived any right to arbitration by participating in discovery. On November 29, the day prior to the scheduled hearings on 8201 and Salus' motions to dismiss, Salus deposed Maxum's vice-president.
 
 
 7
 After the November 30 hearing, the district court granted 8201's request for dismissal of the third-party action, but denied Salus' motion to dismiss Maxum's complaint. Salus' motion to stay the district court proceedings pending appeal of the district court's refusal to dismiss the action by Maxum against Salus was denied on December 21. Meanwhile, Salus deposed Maxum's project manager on December 14, the discovery cutoff date, and the pretrial conference was conducted as scheduled on December 20.
 
 
 8
 On January 5, 1985, Salus moved for a stay of the district court proceedings pending arbitration, but the district court denied this motion, and an appeal was taken from the court's order on January 16. This court consolidated Salus' two pending appeals, and denied Salus' motion to stay the lower court proceedings. The district court subsequently tried the liability issues between Salus and Maxum on February 19 and 20, and ordered the parties to attempt to agree on the damages issues.
 
 
 9
 On March 7, the parties reported to the district court that they had been unable to reach a settlement, and the court ordered them to the jury room to confer until a settlement was reached. Later that day, the parties reported that a settlement existed, but the specific settlement terms were not discussed with the court at that time. When the parties returned to the court on March 25 with versions of the settlement each believed to have been agreed to on March 7, however, the parties represented that there had never been discussion on some of the material terms in the parties' proposed settlements, and informed the court that they disagreed as to matters they thought had been settled on March 7.
 
 
 10
 The district court found that a settlement existed, and conducted a hearing to determine the terms of the March 7 agreement. It entered an oral order delineating the settlement terms on March 25. Maxum appealed to this court from that order, and both parties have appealed the district court's later written order specifying the settlement terms.
 
 II
 
 11
 We address initially the arbitrability of the dispute between Salus and Maxum. To make this determination, we inquire whether state or federal substantive law guides interpretation of the agreement between the parties, whether the parties made an agreement to arbitrate, whether the present dispute is within the scope of any such agreement, and whether the party seeking arbitration has waived that right.
 
 
 12
 When Salus first raised the arbitration issue below, it sought dismissal of the action in reliance on Va.Code Sec. 8.01-577 (1984), which makes arbitration a condition precedent to suit on an arbitrable claim.[3] Yet, though state law might in some cases be applied in a diversity action to determine whether a right to arbitrate exists, federal law will preempt state law if the contract underlying a potentially arbitrable dispute evidences a transaction involving interstate commerce. In re Mercury Construction Corp., 656 F.2d 933, 938 (4th Cir.1981) (en banc), aff'd sub nom. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Salus' motion to stay pending arbitration, made subsequent to the district court's denial of its motion to dismiss, invoked the Federal Arbitration Act, 9 U.S.C. Secs. 1-14 (1982) (the Federal Act). Because the contract between Salus and Maxum involves interstate commerce,[4] and is therefore within the coverage of the federal act, see 9 U.S.C. Secs. 1-2, federal law governs our analysis of the arbitrability of the dispute between Salus and Maxum.
 
 
 13
 The subcontract between Salus and Maxum does not itself contain an arbitration clause, and Salus supports its demand for arbitration upon its claim that the arbitration clause in the general contract between Salus and 8201 was incorporated by reference into the subcontract. It is well settled that, under the Federal Arbitration Act, an agreement to arbitrate may be validly incorporated into a subcontract by reference to an arbitration provision in a general contract. See J.S. & H. Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212, 216-17 (5th Cir.1973); Starr Electric Co. v. Basic Construction Co., 586 F.Supp. 964, 968-69 (M.D.N.C.1982); Vespe Contracting Co. v. Anvan Corp., 399 F.Supp. 516, 520-21 (E.D.Pa.1975); Bigge Crane & Rigging Co. v. Docutel Corp., 371 F.Supp. 240, 243 (E.D.N.Y.1973). We must decide, then, whether the Maxum subcontract effectively incorporated the arbitration provision of the general contract.
 
 
 14
 Article I of the subcontract provides in part that
 
 
 15
 [t]he drawings, specifications, general conditions, special conditions and other documents set forth hereinafter and any amendments and addenda thereto are hereinafter collectively referred to as the "Contract Documents." ... This Agreement and the Contract Documents shall constitute the "Contract." The Contract Documents are listed in EXHIBIT A which is attached hereto and made a part hereof. Any additional provisions which are a part of the Contract are likewise set forth in EXHIBIT A.
 
 
 16
 (Emphasis added.) Article III further provides:
 
 
 17
 The Work shall be executed in strict accordance with the Contract Documents which are a part hereof to the same extent as if attached hereto. By executing this Contract, the Subcontractor warrants and represents that it has examined and understands the Contract Documents and that it is competent to perform the Work in a good and workmanlike manner. The Contract Documents shall be signed or initialled by representatives of the parties hereto for purposes of identification. If the Subcontractor shall fail to have a representative sign or initial the Contract Documents within ten (10) days from the date of execution hereof, the Contract Documents shall be those on file in the Contractor's office and identified by the Contractor as being the set on which this Contract is based. To the extent applicable to, or arising in connection with, the Work, the Subcontractor shall be bound by, and expressly assumes for the benefit of the Contractor, all obligations and liabilities which the Contract Documents impose upon the Contractor.
 
 
 18
 If any provision of the Contract Documents is inconsistent with this Agreement, this Agreement shall govern.
 
 
 19
 (Emphasis added.) Through these provisions, the subcontract manifests an intention of the parties that documents other than the contract itself will become part of the agreement between the parties, and that both Salus and Maxum will assume obligations beyond those specified in the subcontract.
 
 
 20
 Exhibit A to the subcontract indicated that among the additional documents to be considered part of the "Contract Documents" for the subcontract are the "General Conditions of the Contract for Construction" and the project "Specifications." Article 7.9.1 of the General Conditions contained the arbitration agreement between Salus and 8201, which requires that
 
 
 21
 All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.
 
 
 22
 Article 5.3.1 of the General Conditions states that
 
 
 23
 the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by the terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contractor, by these documents, assumes toward the Owner and the Architect. Said agreement ... shall allow to the Subcontractor, unless specifically provided otherwise in the Contractor-Subcontractor agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by these Documents, has against the Owner.
 
 
 24
 The contract Specifications referred to by the subcontract also indicate that the contractor and subcontractor will assume duties allocated between the owner and contractor in the general contract. Section C-1 of the Specifications provides that the General Conditions, of which the arbitration clause is part, "shall apply with equal force to ... all Sub-contractors."
 
 
 25
 Other courts, considering claims that agreements to arbitrate had been incorporated by reference into subcontracts, have examined contract language virtually identical to that in the Salus-Maxum subcontract and concluded that such agreements existed. In Starr Electric, for example, the subcontract provided that "[a]ll the General Conditions and Supplementary Conditions are made part of this Subcontract Agreement." 586 F.Supp. at 969 n. 4. The contract between Salus and Maxum similarly stipulates in Article I that the general conditions and specifications will become part of the subcontract. The arbitration clause, which is part of the general conditions, is thereby incorporated as part of the agreement between Salus and Maxum.[5] By the terms of the general conditions and specifications, Maxum and Salus assumed the same rules with regard to contract rights and duties as did Salus and the Owner. Article 5.3.1 of the General Conditions indicates that every subcontractor will "assume toward the Contractor all the obligations and responsibilities which the Contractor ... assumes toward the Owner" and that the subcontractor receives "the benefit of all rights, remedies and redress against the Contractor that the Contractor ... has against the Owner." Just as 8201 and Salus agreed that their disputes would be arbitrated "unless the parties mutually agree otherwise,"[6] the incorporated arbitration clause creates the power in Salus to insist that the dispute between it and Maxum be resolved by arbitration.
 
 
 26
 Our finding that the Salus-Maxum subcontract incorporates a duty to submit to arbitration comports with the decisions of numerous other courts construing similar contractual language. See, e.g., Gavlik Construction Co. v. H.F. Campbell Co., 526 F.2d 777, 785-89 (3d Cir.1975); J.S. & H. Construction Co., 473 F.2d at 216-17; Uniroyal, Inc. v. A. Epstein & Sons, Inc., 428 F.2d 523, 527-28 (7th Cir.1970); Starr Electric Co., 586 F.Supp. at 968-69. Nevertheless, Maxum calls our attention to two cases in which general contract terms were found not to be incorporated by reference into a subcontract. See United States ex rel. B's Co. v. Cleveland Electric Co., 373 F.2d 585 (4th Cir.1967); VNB Mortgage Corp. v. Lone Star Industries, 209 S.E.2d 909 (Va.1974).
 
 
 27
 In Cleveland Electric, a Miller Act case, this court refused to find incorporated into a subcontract an arbitration agreement contained in the general contract. As several other courts have subsequently observed, however, our analysis in Cleveland Electric depended largely on an understanding that the Miller Act provides special rights to subcontractors that should not be forfeited absent a clear subjective intention to have disputes resolved by arbitration. Under the Miller Act, the subcontractor has no lien against the government upon default by the prime contractor, but must resort instead to suit upon the payment bond furnished by the general contractor. Our desire in Cleveland Electric to insulate the statutory rights of subcontractors from unintended waiver has no import in this case, where the application of general rules of contract construction enables us to find that the parties intended to incorporate the terms of the general contract, including the arbitration clause, without finding separately a specific intent to agree to arbitration. See J.S. & H. Construction Co., 473 F.2d at 215-16; Uniroyal, Inc., 428 F.2d at 527.
 
 
 28
 In VNB Mortgage, the Supreme Court of Virginia held that a subcontract did not incorporate by reference a waiver of lien provision that was part of the general contract. That court's unwillingness to find a unilateral waiver of a right is also distinguished from the instant case. When we find that a right to arbitration exists between the parties, we do not construe the contract in a manner that changes fundamentally the relationship among the general and subcontractor; but merely shift the dispute from a judicial to an arbitration forum. In VNB Mortgage, by contrast, the finding of a waiver of lien rights would leave the subcontractor with a less effective recourse,[7] and that court paralleled our reasoning in Cleveland Electric when it concluded that special statutory rights should not be subject to unintentional waiver. See VNB Mortgage Co., 209 S.E.2d at 914.
 
 
 29
 Because forcing Maxum to submit to arbitration does not work a forfeiture of any special rights vested in subcontractors, but merely relegates Maxum to the dispute forum provided for by an incorporated term of its subcontract, we distinguish Cleveland Electric and VNB Mortgage and find that, under applicable federal law, a duty to arbitrate existed between Salus and Maxum. The next inquiry is whether the underlying dispute between the parties is within the scope of the agreement to arbitrate.
 
 
 30
 The arbitration clause incorporated into the subcontract provides that "[a]ll claims, disputes and other matters ... arising out of, or relating to, the Contract Documents or the breach thereof" will be arbitrable. As discussed earlier, the general conditions make the arbitration duty of the general and subcontractor coextensive with the obligation to the owner and prime contractor. Maxum's claims all arise out of breaches of the subcontract, and are thus within the reach of the agreement to arbitrate. Unless Salus somehow waived its right to demand arbitration, therefore, the dispute between Salus and Maxum must be resolved in the contractual forum.
 
 III
 
 31
 Under the Federal Arbitration Act, a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the subject matter of the federal action decided by arbitration, unless the party seeking arbitration is "in default" of that right. 9 U.S.C. Sec. 3 (1982). Although this principle of "default" is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred. See In re Mercury Construction Co., 656 F.2d 933, 939 (4th Cir.1981), aff'd, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
 
 
 32
 A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay. See Mercury Construction, 656 F.2d at 940; Carolina Throwing Co. v. S & E Novelty Corp., 442 F.2d 329, 330-31 (4th Cir.1971); see also E.C. Ernst, Inc. v. Manhattan Construction Co., 559 F.2d 268, 269 (5th Cir.1977). Maxum asks us to conclude that Salus has forfeited its right to arbitrate by its active participation in the instant litigation. Maxum was put on notice that Salus desired to have their dispute arbitrated on November 15, 1984, when Salus filed a motion to dismiss based on the Virginia arbitration act. Prior to November 15, however, Salus participated fully in the federal litigation. This court must therefore examine Salus' involvement to determine whether Salus has "defaulted" within the meaning of the Federal Arbitration Act.
 
 
 33
 Nearly three months elapsed between the filing by Maxum of its second amended complaint, on August 22, and Salus' motion to dismiss, but mere delay, without more, will not suffice to constitute waiver. See Mercury Construction, 656 F.2d at 939; Carolina Throwing, 442 F.2d at 330 (delay of between three and four months). Rather, the party objecting to arbitration must be actually prejudiced. Id. In Carolina Throwing, we held that the filing of responsive pleadings, including a counterclaim, did not amount to default, see 442 F.2d at 330. We can therefore find waiver by Salus only if we decide that Salus' filing of the third-party complaint against 8201, or its participation in discovery, should be viewed as a default.
 
 
 34
 When, as here, the third-party action does not involve additional discovery or procedural burdens for the original plaintiff, the mere filing of a third-party complaint by a party that seeks arbitration will not permit a court to find that the right to arbitrate has been waived. In general, the third-party claim will not have resulted in "actual prejudice" to the party opposing arbitration. Maxum has certainly suffered no substantial prejudice by the imposition of the third-party claim in this case. 8201 filed its motion to dismiss as part of its answer, and never took an active part in the litigation. Maxum was not required to conduct additional discovery because of 8201's temporary presence as a party, nor was it inconvenienced by any discovery efforts of 8201, which was neither an initiator nor a subject of any discovery.
 
 
 35
 Maxum might be said to have been prejudiced, however, by Salus' use of and participation in discovery. Before it moved for dismissal on November 15, Salus attended some depositions noticed by Maxum, noticed three depositions of its own, and propounded interrogatories and document production requests to Maxum. We find, nevertheless, that none of these actions by Salus brought it into default of its rights under the Federal Arbitration Act.
 
 
 36
 Although Salus may have been benefitted, for purposes of a later arbitration proceeding, by attendance at depositions noticed by Maxum, Maxum was not thereby prejudiced. See General Guaranty Insurance Co. v. New Orleans General Agency, Inc., 427 F.2d 924, 930 (5th Cir.1970). Maxum might have chosen not to conduct its discovery had it been placed on earlier notice of the possibility of arbitration, but Maxum has not disputed on appeal that the availability of discovery would aid, rather than impede, its claims in arbitration. The depositions noticed by Maxum and participated in by Salus were all noticed before Salus had filed its answer, and had been completed before 8201 first raised the arbitration question by its November 5 motion.
 
 
 37
 When Salus moved for dismissal on November 15, it had already noticed three depositions and made discovery requests of Maxum, but had not yet received the benefit of any of its discovery efforts. Salus scheduled the hearing on its motion to dismiss on November 30, the same day as which the motion to dismiss by 8201 had been scheduled for hearing, and only several days after Maxum's deadline for making an answer to Salus' motion. Even while the dismissal motions were pending, however, the parties labored under a scheduling order that created a discovery cutoff date of December 14. Maxum now urges that, in the face of that deadline, Salus was obliged to suspend its discovery efforts until after the court had ruled upon its motion to dismiss.
 
 
 38
 We decline to create a rule that would require a party seeking arbitration to avoid a finding of default by ignoring court-ordered discovery deadlines and assuming the risk that its motion under the Federal Arbitration Act will be unsuccessful. Once Salus moved for dismissal Maxum was on notice of the claim of arbitrability, but Maxum did not formally object to continued discovery before it answered Salus' interrogatories and document requests on November 20 or produced one of its officers for a deposition on November 29. Maxum did raise the question of default on November 26, in its answer to Salus' motion to dismiss, but did not, as was its privilege under the federal rules, seek a protective order that could have allowed it to avoid the "undue burden or expense" that it would have associated with unnecessary discovery. See Fed.R.Civ.P. 26(c). A party confronted with a claim of arbitrability may pursue an order insulating it from discovery that could not be had if the underlying claim is properly the subject of arbitration. Absent a protective order, however, the party seeking arbitration does not lose its contractual right by prudently pursuing discovery in the face of a court-ordered deadline. As Salus received no benefit from discovery initiated by it before it sought dismissal in favor of arbitration, and Maxum subsequently failed to forestall discovery until after resolution of the arbitrability question, Salus did not, by its discovery, waive its right to arbitration.[8]
 
 
 39
 We give little significance to the failure by Salus ever to file a formal demand for arbitration[9] or to the fact that the applicability of the Federal Arbitration Act was not formally raised in the district court until Salus moved for a stay in January 1985. After filing its motion to dismiss on November 15, Salus persisted in its claim that it desired to have its dispute with Maxum resolved by arbitration. Maxum was on notice of this claim on November 15, and suffered no subsequent prejudice attributable to the absence of a formal demand or the failure to make an earlier motion to stay. Salus had moved for dismissal only ten days after arbitration was first demanded by 8201, and given the federal policy favoring arbitration, we cannot say in light of Salus' pursuit of its contractual right that a default by Salus ever occurred.
 
 IV
 
 40
 We finally examine whether the district court erred in finding that a settlement agreement existed between the parties. We observe first that the parties both argue on appeal that a settlement was never agreed to, and note that they disagree as to the scope of the agreement, if it existed. Maxum asserts that if the district court properly found a valid settlement, that settlement resolved the entire controversy between the parties, including the arbitrability issues advanced in this appeal. Salus counters that the settlement agreement, if it ever existed, ran only to questions of damages.
 
 
 41
 We reach the question of the proper scope of the settlement only because it is necessary for us to determine whether the agreement resolved only the damages questions. If the settlement agreement only disposed of damages issues, then it was necessarily predicated upon the district court's finding of liability made after trial of the liability questions. Because we have concluded that the district court should have stayed the proceeding below pending arbitration, we will vacate the trial court's findings as to liability unless by settlement Salus agreed to forego arbitration. If any settlement covered only damages, however, it was necessarily dependent on the vacated judgment of liability, and we could vacate judgment upon the settlement without reaching the question of its existence.
 
 
 42
 In its June 5, 1985, written order finding the terms of the settlement agreement, the district court stated that "the matter of damages" had been referred to the parties for agreement, that the parties had reported "settlement of the amount of judgment," and that the court had conducted "an evidentiary hearing on the issue of whether or not an agreement as to damages had been reached and the terms thereof." The court stipulated in its order that "a settlement as to the damages was reached and agreed to between the parties" and mandated that if the settlement order was not appealed "defendants will dismiss their appeals in the cases now pending."
 
 
 43
 By its terms, the district court's order did not find that defendants had agreed in a settlement to dismissal of their appeals, and we conclude that if a settlement indeed existed, it ran to damages only. When the district court instructed the parties to conduct settlement negotiations, it referred to the desire of the court to avoid making its own determinations on damages if the parties could more easily resolve the damages questions. There is no indication in the record that the parties ever discussed settling more than the damages issues, and the transcript of the district court's evidentiary hearing on the purported settlement agreement does not refer to the settlement in any other context.[10] We therefore conclude that if a settlement existed, it did no more than set forth an agreement as to damages. Because any settlement is therefore dependent on the liability judgment we vacate, we do not decide whether the parties had a meeting of the minds on the damages.
 
 V
 
 44
 In summary, we find that the district court erred when it found that no arbitration agreement existed between Salus and Maxum. We vacate the judgments of the district court and remand with a direction that the proceedings below be stayed pending arbitration of the claims between the parties.
 
 
 45
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 United Pacific is Salus's surety, and these parties will be hereinafter referred to jointly as "Salus."
 
 
 [2]
 Each of these appeals was consolidated for consideration by this court
 
 
 [3]
 Salus' 12(b)(6) motion did not specifically refer to the Virginia provision, but the earlier motion to dismiss by 8201 was based on the Virginia requirement of prior arbitration. Moreover, dismissal is the result provided for by the Virginia statute, while a stay, the subject of Salus' later motion, is the relief afforded by the Federal Arbitration Act. See 9 U.S.C. Sec. 3 (1982)
 
 
 [4]
 In the memorandum accompanying its motion to stay, Salus asserted that the subcontract between Salus and Maxum involved interstate commerce because "both parties to the subcontract are incorporated in different jurisdictions and performance involved the transportation of materials and workers in interstate commerce." Maxum asserts on appeal that because Salus failed to provide affidavits or other documentary evidence of interstate transfers of materials and workers, there is no evidence in the record of interstate commerce sufficient to justify application of the Federal Arbitration Act
 Although we agree with Maxum that the mere circumstance of diversity of citizenship between it and Salus is not sufficient to command application of the Federal Act, the transaction between the parties evidences other connections to interstate commerce. The district court never considered the possibility that the Act might not apply, and the argument was not raised by Maxum below. Rather, the lower court denied the stay motion upon determining that its earlier finding that no arbitration agreement existed enabled it to dispose of the motion to stay. Though the district court did not make a finding that the interstate commerce requirement of the Federal Act was satisfied, we do not discern a genuine dispute over this question on appeal.
 Maxum essentially argues that in order for the Federal Arbitration Act to apply, the party invoking the Act must put forth specific evidence documenting the interstate aspect of the transaction. The statute does not impose such a burden, however. The Federal Act applies to arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce," 9 U.S.C. Sec. 2, but does not require proof by affidavit or other specific evidence of the nexus to interstate commerce. Where, as here, the party seeking arbitration alleges that the transaction is within the scope of the Act, and the party opposing application of the Act does not come forward with evidence to rebut jurisdiction under the federal statute, we do not read into the Act a requirement of further proof by the party invoking the federal law.
 In this case Salus asserted below that the transaction between the parties necessitated the interstate transportation of materials and workers. Maxum did not directly challenge that allegation below, and does not do so here. On its face, the subcontract makes necessary the provision of services by Maxum, a company with its place of business in Maryland, at a construction site in Virginia, the transfer of money from Virginia to the subcontractor in Maryland, and the supplying of materials that would need to be transported across state borders. Thus, while we, as an appellate court, hesitate to engage in factfinding in order to determine whether the Federal Arbitration Act applies, we are able, upon the record before us, to conclude that Maxum has not put the fact of a transaction evidencing interstate commerce in issue.
 
 
 [5]
 Maxum asks us to distinguish Starr Electric because the subcontract in that case did not contain a provision similar to one in this subcontract that indicates that terms of the Maxum subcontract will govern any inconsistent terms in incorporated contract documents. Because the general contract contained an arbitration clause, and the subcontract was silent on arbitration, Maxum argues that the arbitration clause in the general conditions is inconsistent with and overridden by the silent subcontract. This analysis fails, however, because silence on an issue spoken to in another document does not render the documents inconsistent. The terms of the two contracts would be inconsistent if they could not simultaneously be true. Here there is no term in the subcontract that belies the existence of the arbitration right sought to be enforced by Salus
 
 
 [6]
 See General Condition 7.9.1
 
 
 [7]
 In this action, the finding of a right to arbitration does not disturb the lien rights of Maxum, which has already filed a lien on the property that is the subject of the dispute between the parties
 
 
 [8]
 Salus also deposed a Maxum official on December 14, after the district court ruled against the motion to dismiss but before Salus' motion for a stay pending arbitration. At the time of this second deposition, Salus had appealed the court order denying dismissal. We cannot find that the taking of this deposition, on the discovery cutoff date, amounted to a default of the right to arbitration. Salus was actively pursuing its arbitrability claim, and Maxum had not sought either an extension of the discovery deadline or a protective order. Salus was not obligated to forego discovery and risk substantial prejudice in a proceeding that might not, ultimately, be stayed or dismissed in favor of arbitration
 
 
 [9]
 Salus apparently concluded, incorrectly, that it could not make its formal demand until the project architect had ruled on its claims. Under General Condition 2.2.12, claims are required to be submitted to the architect before a demand for arbitration could be made. Salus mistakenly assumes that it could not make a demand until the architect ruled. Under General Condition 2.2.12, however, a demand may be filed once the architect has ruled or ten days have elapsed since submission of the claim to the architect. Because Salus, according to its brief, submitted the Maxum claim to the architect on September 13, 1984, it was free to make a final demand at any time after September 23
 
 
 [10]
 During the March 25 hearing the court asked each party if they thought on March 7 that "the case" had been settled, but in the context of the court's instructions prior to the March 7 meeting and the entire transcript of the March 25 hearing, there is no evidence in the record that the parties ever agreed to settlement of the arbitrability appeals