983 F.2d 1056
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William M. GARDNER, Jr., Personal Representative for the
Estate of Cushing M. Hall, Plaintiff-Appellant,
v.
Cecil B. BISHOP, Jr.; Alex. Brown & Sons Incorporated,
Defendants & Third-Party Plaintiffs-Appellees,
v.
John W. GARDNER; Maryland National Bank, Third-Party Defendants.
 No. 92-1705.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 29, 1992
Decided: January 19, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. M.J. Garbis, District Judge. (CA-91-728-MJG)
 ARGUED: Lawrence L. Hooper, Jr., Tydings & Rosenberg, Baltimore, Maryland, for Appellant.
 Max Higgins Lauten, Kramon & Graham, P.A., Baltimore, Maryland, for Appellees.
 ON BRIEF: William C. Sammons, Tydings & Rosenberg, Baltimore, Maryland, for Appellant.
 D.Md.
 Reversed and remanded.
 Before RUSSELL, HALL, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Plaintiff William M. Gardner, Jr.,[1] appeals the district court's denial of his Motion to Stay Proceedings Pending Arbitration before the New York Stock Exchange. The district court held that William waived his right to arbitration by pursuing discovery in federal court to the substantial prejudice of Defendants Alex. Brown & Sons, Inc., and Cecil Bishop. We reverse and remand.
 
 I.
 
 2
 As early as 1975, Cushing M. Hall maintained a securities account, allegedly worth more than $750,000, with Alex. Brown & Sons, Inc., an investment banking firm in Baltimore. Unlike most accounts, Hall's account was not governed by a written account agreement.
 
 
 3
 In 1985, Hall moved to Montana to live with her younger son, John. Shortly before Hall's move to Montana, Cecil Bishop became her account representative at Alex. Brown. Over the course of the next several years, Bishop received instructions from either Hall or John to sell various bonds and securities. After selling a requested item, Bishop mailed a check representing the proceeds of the sale to Hall's address in Montana. Many of the checks were deposited into accounts in which Hall had an interest. Alex. Brown sent Hall monthly statements as well as statements confirming each sale ordered for her account. By August 1989, the account was depleted.
 
 
 4
 Upon her death in May 1990, Hall's elder son, William, was appointed personal representative of the estate. On March 22, 1991, William filed this diversity suit in the United States District Court for the District of Maryland against Bishop and Alex. Brown, alleging four causes of action: conversion, negligence, breach of fiduciary duty, and accounting (equitable relief). Essentially, William alleged that Defendants did not obtain proper authorization from his mother to permit John to order sales on her account.
 
 
 5
 One hundred and nineteen days after filing the complaint with the district court, William served the Defendants with a copy of the complaint.2 The Defendants filed third-party complaints against John and the Maryland National Bank for indemnification and contribution.[3] The district court entered a scheduling order establishing January 21, 1992, as the deadline for the completion of all discovery. Instead of proceeding with discovery at full speed, the parties devoted a considerable amount of time trying to reach a settlement. By December 20, 1991, only limited discovery had taken place. As a result of their failure to settle, the parties requested an extension of the discovery deadline until May 1, 1992. The district court granted the extension of time.
 
 
 6
 Over the course of the next several months, the parties pursued limited discovery. Defendants served William with one set of interrogatories, one set of requests for the production of documents, and four sets of requests for admissions of fact.[4] William served Defendants identification and authentification of documents. See Plaintiff's Response to First Set of Requests for Admissions of Fact (identification of seventeen Statements of with a single set of interrogatories and a single set of requests for production of documents. On March 19, 1992, the parties stipulated to a second extension of the discovery deadline, this time until June 2, 1992, which the district court approved. The parties also agreed to a deposition schedule, which provided that William would be deposed on April 14, 1992. On the day before his deposition, however, William notified the Defendants that he would not appear for his deposition because he intended to demand arbitration.[5] On April 14, 1992, thirteen months after he brought this action, William filed the instant motion to stay proceedings pending arbitration by the Arbitration Department of the New York Stock Exchange.
 
 
 7
 Defendants opposed William's motion on the ground that William had waived his right to demand arbitration by invoking the judicial process to the substantial prejudice of Defendants.[6] Defendants asserted six distinct sources of prejudice: (1) William used discovery mechanisms not generally available in arbitration, (2) Defendants might not be able to obtain evidence from Montana witnesses in an arbitration proceeding, (3) Defendants had incurred substantial legal expenses, (4) Defendants might have chosen different counsel for a New York arbitration proceeding, (5) Defendants had been forced to initiate third-party proceedings against John and the Maryland National Bank, and (6) separate proceedings would raise the possibility of inconsistent verdicts.
 
 
 8
 On May 27, the district court denied William's motion for a stay of proceedings, agreeing with Defendants that William had waived his right to arbitration. The district court concluded that Defendants would suffer substantial prejudice if the proceedings were stayed, specifically identifying three sources of prejudice. First, the district court concluded that William had unfairly taken advantage of the discovery process. The court stated, "[w]hatever may be the differences between discovery here and in the arbitration proceedings, the Plaintiff got whatever he wished out of this Court's procedure and seeks to deny the Plaintiff [sic: Defendants] the same opportunities." (J.A. at 269.) Second, the court concluded that Defendants "very likely" would have hired different counsel for a New York arbitration, and would have to spend more money readying new counsel for such a proceeding. Third, William's suit in federal court forced Defendants to proceed against John and the Maryland National Bank, when they otherwise might have chosen a different course.
 
 
 9
 William now appeals the denial of his motion to stay proceedings pending arbitration.
 
 II.
 
 10
 William contends that the district court erred in determining that Defendants would suffer substantial prejudice if arbitration were permitted, and hence that the district court erred in concluding that he had waived his right to arbitration. We review the district court's decision de novo. Fraser v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 817 F.2d 250, 251 (4th Cir. 1987).
 
 
 11
 There is a strong federal policy favoring arbitration. Section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. § 2 (1988), provides that:
 
 
 12
 A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
 
 
 13
 The Supreme Court has noted that § 2 declares a statutory policy of "rapid and unobstructed enforcement of arbitration agreements." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983). Moreover, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 24-25.
 
 
 14
 To effectuate this policy, Congress provided that once a party demonstrates that a controversy is subject to arbitration, the district court must stay further proceedings until the arbitration is concluded. 9 U.S.C. § 3 (1988).[7] The district court may decline to stay proceedings, however, if the party seeking arbitration is "in default in proceeding with such arbitration." Id. Defendants contend that William is in fact "in default" and therefore is not entitled to arbitrate his claims.[8]
 
 
 15
 We have previously held that "[a]lthough this principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985). Defendants bear the burden of proving waiver, and the burden is a heavy one. Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990).
 
 
 16
 To prove waiver, Defendants must demonstrate that William "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice" Defendants. Maxum, 779 F.2d at 981; accord Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991); Miller Brewing Co. v. Ft. Worth Distrib. Co., 781 F.2d 494, 497 (5th Cir. 1986). Here, the sole issue is whether Defendants would be prejudiced by permitting arbitration.[9] Cf. Fraser, 817 F.2d at 252 (dispositive question is actual prejudice); Maxum, 779 F.2d at 982 (same). There is no one test for determining prejudice; rather, we must examine the facts and circumstances of each case. Valero Refining, Inc. v. M/T Lauberhorn, 813 F.2d 60, 65 (5th Cir. 1987). After a careful review of the record before us, we conclude that Defendants have failed to demonstrate sufficient prejudice to overcome the heavy presumption in favor of arbitration. We will discuss in turn the Defendants' principal allegations of prejudice.
 
 
 17
 First, Defendants argue that they suffered prejudice from the disclosure of crucial information obtained by William through the generous discovery procedures available in federal court. Defendants argue that they made significant admissions in their responses to William's discovery requests: they produced a copy of their"Internal Compliance Manual"; they admitted that John had ordered several trades on his mother's account; they admitted that they did not know whether John had a signed power-of-attorney from his mother; and they explained their defenses in greater detail.[10] Additionally, Defendants identified their expert witnesses on April 7, 1992.[11]
 
 
 18
 To establish prejudice from the production of documents and the revelation of other information related to the case, Defendants must show that William could not have obtained this information in arbitration. See Walker v. J.C. Bradford & Co., 938 F.2d 575, 578 n.3 (5th Cir. 1991) (prejudice more likely if discovery revealed items not discoverable in arbitration); Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 159 (8th Cir. 1991) (prejudice may result from use of discovery methods not available in arbitration). Defendants have not made such a showing. The Arbitration Rules of the New York Stock Exchange provide extensive rights of discovery. Rule 619(a) provides that the parties "shall cooperate to the fullest extent practicable in the voluntary exchange of documents and information to expedite the arbitration." (Emphasis added.) Moreover, should a party fail to cooperate, the arbitrator may issue any ruling that "is necessary to permit any party to develop fully its case." New York Stock Exchange Arbitration Rule 619(e). Defendants have not shown that William obtained anything through discovery under the Federal Rules of Civil Procedure that he could not have obtained in arbitration. Although the disclosure of this information may handicap Defendants' ability to defeat William's claims, the disclosure itself is not prejudicial.
 
 
 19
 Defendants present a second discovery-related source of prejudice. They argue that if they are forced to participate in arbitration, they may be unable to obtain evidence from witnesses in Montana. Even if such a deprivation of evidence were to occur,[12] Defendants would not be prejudiced, for they will have the same rights of discovery that they would have had if the dispute had been commenced initially before the New York Stock Exchange.
 
 
 20
 Defendants next argue that they have expended substantial resources preparing for proceedings in federal district court, and that forcing them to participate in arbitration will unnecessarily increase their legal expenses. Forcing a party to prepare repeatedly for litigation can constitute prejudice. Fraser, 817 F.2d at 252. Defendants assert that they tailored their discovery for a motion for summary judgment, and that the information they obtained will not necessarily be useful in arbitration. This assertion is belied by the record. As noted above, Defendants' discovery did little more than identify documents and signatures. This information will be central to any defense, and will certainly be useful in arbitration. Similarly, the effort expended preparing for William's deposition, although somewhat frustrated by William's refusal to appear for that deposition, will be useful in examining him as a witness. Although a party can be prejudiced by being forced to bear unnecessarily the expenses associated with a trial, E.C. Ernst, Inc. v. Manhattan Constr. Co., 559 F.2d 268, 269 (5th Cir. 1977), cert. denied, 434 U.S. 1067 (1978), Defendants have not presented persuasive evidence that their limited discovery will not be useful in arbitration.[13] Finally, Defendants argue that prejudice would arise in connection with their third-party suit against John and the Maryland National Bank. They raise the specter of inconsistent verdicts and the unnecessarily duplicative costs of conducting separate proceedings. The Supreme Court, however, has indicated that under federal law a party who agrees to submit a dispute to arbitration must necessarily accept the risk of inconsistent verdicts in different forums. "Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Moses H. Cone Memorial Hosp., 460 U.S. at 20. The misfortune of having to resolve related disputes in different forums "occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." Id. (emphasis in original); see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985) ("[T]he Arbitration Act requires district courts to compel arbitration of pendant arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.").[14] Consequently, the third-party claims do not present a cognizable source of prejudice.
 
 
 21
 To the extent Defendants present other claims of prejudice, we find them speculative and without merit. Because Defendants have failed to prove that a stay of proceedings in federal court pending arbitration would prejudice them in any significant way, we conclude that William has not waived his right to pursue arbitration. In reaching our conclusion, we find instructive the Fifth Circuit's opinion in Walker v. J.C. Bradford & Co., 938 F.2d 575. In Walker, before demanding arbitration, the defendant served plaintiff with interrogatories, requested the production of documents, answered the complaint, and participated in several efforts to extend discovery. Id. at 576. Thirteen months into the litigation, the defendant demanded arbitration. Id. The Fifth Circuit did not approve of the defendant's behavior, id. at 577, but nonetheless held that his participation in the judicial process had not prejudiced the opposing party, and therefore he had not waived arbitration. Id. at 578-79.
 
 
 22
 Our conclusion is similar. Although William should have proceeded with arbitration from the outset, his participation in the proceedings in the district court was not sufficiently prejudicial to warrant overriding the strong federal policy in favor of arbitration. Consequently, we reverse the district court's denial of William's motion for a stay pending arbitration and remand for further proceedings not inconsistent with this opinion.
 
 REVERSED AND REMANDED
 
 
 [1]
 Plaintiff and third-party-defendant John Gardner are the sons of Cushing M. Hall. Because they share the same last name, we will refer to them by their first names
 
 
 [2]
 William represented to the district court that he delayed service of the complaint because he was hoping to settle the matter with his brother John and avoid litigation entirely
 
 
 [3]
 Defendants alleged that the Bank improperly honored checks payable to Hall but fraudulently endorsed by John
 
 
 [4]
 The requests for admissions of fact related entirely to the Account sent to Hall) (J.A. at 67); Second Set (identification and authentification of twenty checks mailed to Hall) (J.A. at 80); Third Set (identification of one Statement of Account and one check) (J.A. at 144); Fourth Set (identification of one Statement of Account and forty-four Confirmation Statements) (J.A. at 154)
 
 
 [5]
 No other depositions took place in this litigation
 
 
 [6]
 Defendants did not contest that William's claims were arbitrable. Under Rule 600(a) of the New York Stock Exchange Arbitration Rules, a customer may demand arbitration of "[a]ny dispute, claim or controversy between a customer ... and a ... member organization ... arising in connection with the business of such ... member organization." New York Stock Exchange Arbitration Rules, reprinted in II Scott E. Richter, Securities Litigation: Forms & Analysis app. 8 (1992). At all relevant times, Alex. Brown has been a member organization of the New York Stock Exchange
 
 
 [7]
 Section 3 provides:
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
 (Emphasis added.)
 
 
 [8]
 Defendants characterize William's "default" as a "waiver" of his right to arbitrate
 
 
 [9]
 William urges us to adopt the more demanding standard of waiver employed in the Eighth and Ninth Circuits, which would require Defendants to show not only that (1) William acted inconsistently with an existing right to arbitrate and that (2) those inconsistent acts prejudiced Defendants, but also that (3) William knew of his right to arbitrate. Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 158 (8th Cir. 1991); Britton, 916 F.2d at 1412. Because we find that Defendants have not established prejudice, we need not decide whether to adopt this standard or address whether William knowingly waived his right to arbitrate
 
 
 [10]
 The specific admissions and documents listed here were not presented to the district court. In their memorandum opposing the motion for a stay of proceedings, Defendants asserted only that they had made "potentially significant admissions" and that they had disclosed the Internal Compliance Manual, which they described to the district court as only "a confidential document which is not distributed outside the company." (J.A. at 215.) Technically, we should not consider the more specific facts because they were not before the district court. See Fed. R. App. P. 10(a); Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1165 (3d Cir. 1986) ("The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court."), cert. denied, 481 U.S. 1070 (1987); cf. also Kirshner v. Uniden Corp. of America, 842 F.2d 1074, 1077 (9th Cir. 1988) (under the Ninth Circuit's local rules, "[p]apers not filed with the district court or admitted into evidence by that court are not part of the clerk's record and cannot be part of the record on appeal."). Even if we did consider them, however, they would still be insufficient to establish prejudice
 
 
 [11]
 Defendants point out that under the rules of arbitration, they would not have had to identify any witnesses, including expert witnesses, until ten days before the arbitration. New York Stock Exchange Arbitration Rule 619(c)
 
 
 [12]
 We note that New York Stock Exchange Arbitration Rule 619(f) provides in part that the "arbitrator(s) and any counsel of record to the proceedings shall have the power of the subpoena process as provided by law." Section 7 of the Federal Arbitration Act permits district courts to compel the attendance of witnesses before an arbitration panel. 9 U.S.C. § 7 (1988)
 
 
 [13]
 Defendants also argue that their research into evidentiary and conflicts of laws issues will not be useful in arbitration. Defendants, however, point to nothing in the record indicating that they in fact conducted such research, or that the research was sufficiently extensive to create prejudice
 
 
 [14]
 To the extent that the Defendants may have suffered prejudice from the denial of the opportunity to choose a different course of action with respect to the third-party defendants, Defendants have failed to show that they would have proceeded any differently with respect to their claims against John or the Bank. Defendants have not shown that the present forum-the United States District Court for the District of Maryland-is inadequate for their purposes
 Moreover, by proceeding to arbitration without the participation of the third-party defendants, Defendants may actually save time and expense. Should they prevail in arbitration, the third-party proceeding will become moot.