UNISTRUT SPACE FRAME SYSTEMS, INC., Plaintiff,

v.

ATLANTIC PLATE & WINDOW GLASS, CO., INC., et al., Defendants.

No. Civ.A. 96–01291 (EGS).

United States District Court, District of Columbia.

Dec. 31, 1996.

Kenneth K. Sorteberg, Roger C. Jones, Huddles & Jones, P.C., Columbia, MD, for Unistrut Space Frame Systems, Inc.

David Hilton Wise, Fairfax, VA, Patrick Michael Donahue, Parrott & Donahue, Annapolis, MD, for Atlantic Plate and Window Glass Co., Inc.

Patrick Michael Pike, Sharon K. Engelhard, Goldberg, Pike & Besche, P.C., Baltimore, MD, for Great American Ins. Co.

Kenneth K. Sorteberg, Huddles & Jones, P.C., Columbia, MD, for Fireman's Ins. Co.

### *MEMORANDUM AND ORDER*

SULLIVAN, District Judge.

## I. INTRODUCTION

Plaintiff, Unistrut Space Frame Systems, Inc. ("Unistrut"), a space frame contractor in the construction industry, commenced this action against defendant, Atlantic Plate and Window Glass, Co., Inc. ("APG"), a subcontractor in the same industry, and its surety, Great American Insurance Co., for breach of a sub-subcontract for construction of a space frame system on the World Bank Main Complex. Rehabilitation Project. ("World Bank Project"). APG has filed a third party complaint for damages against Firearm's Insurance Co. ("Fireman's"), the surety for Unistrut's performance bond, because of APG's contentions that Unistrut is in default of its contractual obligations. Fireman's contends that APG's Third–Party Complaint is defective for lack of both diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367.

Unistrut and APG are in agreement that arbitration is the remedial procedure to resolve their dispute; they disagree, however, on which arbitration procedure controls. Thus, the major substantive issue in this case is which of two arbitration provisions in two contracts controls: (1) World Bank's prime contract with the general contractor, The George Hyman Construction Company ("Hyman"); or (2) the subcontract between APG and Hyman. Unistrut contends that the dispute is subject to arbitration pursuant to the arbitration clause in the subcontract between APG and Hyman. APG argues that, although the APG–Unistrut sub-subcontract does not contain an arbitration clause *per se*, it incorporates by reference the arbitration provisions of the World Bank–Hyman prime contract.

Before the Court is APG's Motion to Dismiss or Stay Proceedings Pending Arbitration and Fireman's Motion to Dismiss APG's Third Party Complaint. Upon consideration of these motions, the points and authorities in support of and in opposition thereto, and the oral arguments of counsel, APG's Motion to Stay the Proceedings is **GRANTED** and its Motion to Dismiss the Complaint is **DENIED**. Fireman's Motion to Dismiss the Third–Party Complaint is **DENIED**. Arbitration provisions shall be conducted in accordance with the dispute resolution provisions of the prime contract between the World Bank and Hyman.

## II. FACTS

The World Bank Project began on April 13, 1992, when the Owner, the World Bank, and the general contractor, Hyman, entered into the prime contract. Significantly, the prime contract documents include (1) drawings and specifications which set forth the work to be performed and (2) the General Conditions to the prime contract. The prime contract contains an arbitration clause which subjects disputes to the UNCITRAL Arbitration Rules and requires that arbitration of disputes commence only "upon final completion" of the project.

Hyman entered into a seven million dollar subcontract with Unistrut on May 26, 1992 for the supply and installation of a space frame system. On November 16, 1992, APG entered into a $850,000 sub-subcontract with Unistrut for the supply and installation of the space frame system. Unistrut alleges that APG has failed and refused to pay Unistrut money received by APG from Hyman for Unistrut's contractual performance. Unistrut has also claimed additional compensation from APG for what Unistrut contends to be the reasonable value of unpaid work, labor, material and services that it has provided in connection with the World Bank Project. According to APG, the present dispute also includes Unistrut's claim for additional costs incurred as a result of a design change to the contract documents made by the owner's architect and back charges assessed against APG by Hyman and the Owner for delays and defective work allegedly caused by Unistrut on the World Bank Project.[1] Currently, APG is still working on the World Bank Project.

APG claims that the arbitration clause in the prime contract controls the procedures for resolving any disputes. Unistrut disagrees and argues that, while its revoked sub-subcontract with APG does not have an arbitration clause *per se*, the Hyman–APG subcontract has an arbitration clause which controls in this case.[2] Under the arbitration provision of the Hyman–APG subcontract, arbitration may commence at any time and must abide by the AAA's Construction In-

---

1. APG argues that Unistrut materially breached the sub-subcontract by (1) failing to perform its work in accordance with Sub-subcontract; (2) delaying, impacting, interfering and disrupting the work of APG, Hyman and other subcontractors on the project; (3) refusing and failing to deliver materials; (4) performing work in a defective manner; and (5) refusing to comply with the disputes procedure of the sub-subcontract. APG claims that it incurred $700,000 in damages.

2. In its Response to Defendant's Joint Motion, Unistrut agrees with APG's suggestion that arbitration provisions of a contract can be incorporated by reference into a subcontract. *See Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir.1985). Such arbitration provisions, argues Unistrut, survive the revocation of a contract. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

dustry Rules. However, pursuant to the arbitration provision of the World Bank/Hyman contract, arbitration can only be pursued after "Final Completion" of the project.

### III. Defendants' Joint Motion to Dismiss or Stay Proceedings Pending Arbitration

### A. Unistrut–APG Sub-subcontract, Article 10.1, and Prime Contract, Article 11

■ In resolving defendant's motion to dismiss or to stay proceedings, the Court first must address the merits of APG's argument that the arbitration provisions of the prime contract control. APG argues that, while the sub-subcontract between APG and Unistrut does not have an arbitration provision, the arbitration provision applicable to the sub-subcontract is set forth in the prime contract and the prime contract's general provisions; according to APG, the sub-subcontract incorporates both by reference. Specifically, the Court must decide whether Article 10.1 of the sub-subcontract subjects the present dispute to the arbitration provisions of Article 11 of the prime contract.

The Unistrut–APG sub-subcontract, Article 10.1, states that "any claim or dispute which arises ... shall be governed by the Contract Documents." Plaintiff's Response to Defendant's Joint Motion, Exh. C, at 7. The Court is persuaded by APG's argument that the "Contract Documents" encompass the prime contract between the Owner and Hyman. Article 1 of the prime contract defines "Contract Documents," as "this Contract" [i.e. the contract between World Bank and Hyman] and "the General Conditions, the Drawings, the specifications, IFB No 92–213 and the Addenda ... and all modifications issued after the execution of this Contract." Plaintiff's Response to Defendant's Joint Motion, Exh. A, at 2.

Article 11 of the prime contract states that "all disputes arising out of the World Bank Project shall be settled by arbitration at final completion" of the project and are subject to the UNCITRAL Arbitration Rules. Plaintiff's Response to Defendant's Joint Motion, Exh. A, at 11. "Final completion" within the

meaning of the latter contract means "full and complete performance of the work." *Id.*

The Court finds persuasive APG's argument that the prime contract controls the current dispute. Unistrut's arguments that the prime contract does not apply, are not persuasive. First, Unistrut argues that APG (1) misquotes the language of the Arbitration provision of the prime contract and (2) improperly construes Article 10 of the sub-subcontract. Article 11.1 of prime contract states that "any dispute, controversy, or claim arising out of or related to *this* Contract ... shall be settled...." *Id.* (emphasis added). APG quotes this provision as including the phrase "the Contract." Unistrut argues that the prime contract does not apply because the phrase *"this Contract"* could apply only to a dispute between Hyman and the owner. By contrast, argues Unistrut, had the prime contract used the phrase *"the Contract,"* then and only then, would that contract contemplate "a dispute *relating to* the contract between Hyman and the Owner" *See id.* (emphasis added).

The Court disagrees with this argument for several reasons. First, while it is true that the prime contract incorporates the phrase *"this Contract,"* not *"the Contract,"* as quoted by APG, the distinction is of no consequence. On its face, Article 11.1 of the prime contract, states that the UNCITRAL rules "apply to disputes *relating to* ... this Contract." *Id.* (emphasis added). And, as APG argues, the dispute between Unistrut and APG *is* "related to" alleged changes to the contractual provisions of the prime contract. It is clear that Unistrut has made a claim for additional costs allegedly due to a design change from the specifications within the contract documents made by the owner's architect.

In the alternative, Unistrut argues that Article 10 of the sub-subcontract does not apply to its current dispute with APG because the dispute does not involve the owner. Unistrut insists that, read as a whole, "Article 10 must be construed as relating to only disputes involving the Owner." *See 1010 Potomac Associates v. Grocery Manufacturers,* 485 A.2d 199, 205–206 (D.C.App.1984) (In construing a sub-subcontract, the "writing

must be interpreted as a whole."). As grounds for this claim, Unistrut indicates that Article 10.1 refers several times to disputes involving the owner.

The Court also finds this argument to be unpersuasive. First, while Article 10.1 does apply to disputes involving the owner, nothing in that Article states that it refers *exclusively* to such disputes. Interpreted as a whole, Article 10.1 does not reflect the narrow construction that Unistrut attempts to place on it. In fact, the first sentence of Article 10.1 unequivocally states that *"any* claim or dispute which arises including adjustments to compensation or time of completion shall be governed by the [Prime] Contract Documents." Plaintiff's Response to Defendant's Joint Motion, Exh. C, at 7 (emphasis added). Second, interpreted as a whole, Article 10 ("Claims") refers to *"any and all* claims ... to further payment beyond the Sub-subcontract amount" brought by Unistrut. *See id.* That Article does not, on its face, limit such claims to those against the owner.

Third, Article 10.1 could still apply to the current dispute because, as APG points out, the current dispute *does* involve the Owner. Back charges were allegedly charged against APG by Hyman *and the Owner* for delays in work on the World Bank Project. Fourth, the first sentence of Article 10.1 may also apply because the current dispute between APG and Unistrut does in fact involve both adjustments to compensation and time completion of the project. Unistrut argues that APG has withheld compensation that Hyman designated for Unistrut and the central issue is whether Unistrut must complete the project either before or after arbitration. Fifth, applying common sense, it is illogical that, interpreted as a whole, an entire and sole section on "Claims" in a contract between APG and Unistrut, would only apply to claims involving the Owner and would not make provisions for claims between the only two parties to the contract sub-subcontract.

3. The Court rejects the argument advanced by Unistrut that Article 11.C, the Arbitration Provision of the Hyman–APG subcontract, controls. In rejecting that argument, the Court has considered whether, pursuant to Article 11.C, the dis-

## B. "Reasonableness" of Subjecting Unistrut to Arbitration Provisions of Prime Contract

Finally, without any persuasive authority whatsoever, Unistrut also argues that it is "unreasonable and illogical" to force upon a sub-contractor an arbitration provision established between World Bank and Hyman. Unistrut argues that the World Bank and Hyman are in direct privity with each other but Unistrut, whose work on the project is less than one percent of Hyman's prime contract with the owner, is not in privity with either of them. The Court holds that it is not "illogical and unreasonable" to bind Unistrut to the arbitration provisions of the prime contract where the sub-subcontract Unistrut and APG so requires.[3]

## IV. Third Party Defendant's Motion to Dismiss on Jurisdictional Grounds

Fireman's argues that APG's Third–Party Complaint is defective for lack of both diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367. Fireman's does not provide case law or persuasive authority that supports its position. Supplemental jurisdiction exists as to this joinder and therefore, diversity jurisdiction between Fireman's and APG is not required. Precedent of long-standing holds that "joinder of non-diverse counterclaim defendants does not destroy diversity jurisdiction because there is complete diversity between the original parties." *See* APG's Opposition to Motion to Dismiss Third Party Complaint at 3 (citing *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation,* 15 F.3d 1230, 1237–38 (3d Cir.1994), *cert. denied,* 513 U.S. 915, 115 S.Ct. 291, 130 L.Ed.2d 206 (1994)). While there is no diversity jurisdiction between APG and Fireman's because both are New Jersey corporations, there *is* diversity of citizenship between the original parties, APG (a Delaware corporation) and Unistrut (a Michigan corporation).

Moreover, APG must only satisfy *either* diversity, federal question or supplemental

pute between Unistrut and APG is: (a) a controversy between Hyman and the subcontractor [APG]; (b) not relating an action or inaction of the Owner [World Bank] and (c) not involving the Contract Documents.

jurisdiction. *See* Fed.R.Civ.P. 13(h). Since the requirements for supplemental jurisdiction are met, diversity jurisdiction is not required. *See id.* Under § 1367(a), the common nucleus of operative fact requirement is met. *See* 28 U.S.C. § 1367(a). The requirements of § 1367(b) have not been contravened. *See* 28 U.S.C. § 1367(b). Contrary to Fireman's analysis, that section bars supplemental jurisdiction over third party claims by the plaintiff. *See Texas Eastern,* 15 F.3d at 1238. APG is the *defendant,* not the plaintiff. *See id.* Third, § 1367(c) is not at issue because the grounds for the Court's discretion to decline supplemental jurisdiction are not implicated.[4] *See* 28 U.S.C. § 1367(c).

### ORDER

APG's Motion to Stay Proceedings Pending Arbitration is **GRANTED;** APG's Motion to Dismiss is **DENIED;**[5] Fireman's Motion to Dismiss APG's Complaint is **DENIED.** A joint status report shall be filed with the Court by no later than **June 1, 1997.**

---

4. There is no novel or complex state claim present; nor does this claim predominate over the other claims; nor has the original action been dismissed; nor is there any other compelling reason to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c).

5. Although Great American has indicated its willingness to toll the statute of limitations in connection with Unistrut's claims relating to Great American's performance bond, the Court nevertheless is persuaded that its authority to dismiss this case while arbitration proceedings are pending is precluded by Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. *See Piltch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 714 F.Supp. 537, 539 (D.D.C.1989).