Betty J. LAURICIA, Plaintiff,

v.

MICROSTRATEGY INC., Defendant.

No. Civ.A. 00–990–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 13, 2000.

Claude David Convisser, Claude D. Convisser & Associates, P.C., Alexandria, VA, for plaintiff.

H. Alan Young, Young, Goldman & Van Beek, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this employment suit, plaintiff, Betty Lauricia, alleges that defendant, MicroStrategy, Inc. ("MicroStrategy"), her former employer, retaliated against her for engaging in protected activity, in violation of Title VII and the Age Discrimination in

Employment Act ("ADEA"). At issue by virtue of MicroStrategy's motion to dismiss are the following questions: (1) whether MicroStrategy has waived its right under the employment contract to compel arbitration of plaintiff's retaliation claims; (2) whether jurisdiction is lacking owing to the Equal Employment Opportunity Commission's ("EEOC") issuance of a right-to-sue letter prior to the expiration of the 180–day period; and (3) whether plaintiff has failed to exhaust her administrative remedies by declining to join in conciliation efforts at the EEOC.

## I

This action is one of four lawsuits growing out of plaintiff Betty Lauricia's employment dispute with defendant MicroStrategy. Plaintiff was employed as MicroStrategy's Vice President of Corporate Development Operations until August 4, 2000, when she was terminated.[1] In mid-March of this year, plaintiff informed MicroStrategy that she had filed a claim of discrimination on the basis of sex and age with the EEOC. Specifically, plaintiff's original EEOC charge alleged that MicroStrategy (i) pays its female employees fewer stock options than its male employees, (ii) failed to promote plaintiff based on her sex and age, and (iii) retaliated against plaintiff for raising these complaints within the company. Furthermore, plaintiff also filed a complaint with the United States Department of Labor's Wage and Hour Division alleging that MicroStrategy was failing to pay overtime in violation of FLSA, 29 U.S.C. §§ 201 et seq. MicroStrategy contends that, at or near the time it learned of plaintiff's EEOC charge, it also learned that plaintiff had stolen MicroStrategy documents containing trade secrets, confidential information, and information protected by the attorney-client privilege, and delivered these documents to her attorney. Subsequently, MicroStrategy placed plaintiff on paid administrative leave and filed three suits against the plaintiff.

The first suit, filed in this Court on March 16, 2000, named plaintiff and her attorney as defendants. This suit sought a declaratory judgment on the questions (i) whether defendant illegally retaliated against plaintiff in violation of the FLSA, 29 U.S.C. § 215(a)(3), and (ii) whether defendant would be liable for retaliation against plaintiff if she were fired. The complaint also alleged various state law claims, including theft of trade secrets and breach of fiduciary duty, against plaintiff and her attorney. *See MicroStrategy Inc. v. Lauricia and Convisser,* C.A. No. 00–453–A *("MicroStrategy I "), appeal pending,* 4th Cir. No. 001483. *MicroStrategy I* was dismissed for lack of subject matter jurisdiction. *See MicroStrategy Inc. v. Convisser,* Order, C.A. No. 00–453–A (April 24, 2000).

The second suit was filed by MicroStrategy on April 27, 2000 in the Circuit Court for the City of Alexandria. Again, the named defendants were the plaintiff and her counsel, and the claims alleged were the same as the state law claims asserted in *MicroStrategy I. See MicroStrategy Inc. v. Lauricia,* Alex. Cir.Ct. Chancery No. 000520 (filed April 27, 2000) *("MicroStrategy II ").* This suit is pending and currently in the discovery stage.

The third suit was filed in this Court on June 15, 2000, after MicroStrategy had received a copy of a letter plaintiff addressed to the Alexandria Circuit Court, stating that she intended to file a federal claim against defendant, on June 16, for, *inter alia,* retaliation in violation of Title VII, the ADEA, and FLSA. *See MicroStrategy Inc. v. Lauricia,* Civ. No. 00–985–A *("MicroStrategy III ").* *MicroStrategy III* again names plaintiff and her counsel as defendants,[2] and, in this suit, MicroStrategy again seeks a declaration that its conduct did not, and would not, violate

---

1. Defendant placed plaintiff on administrative leave from March 14, 2000 to August 4, 2000.

2. Plaintiff's counsel has since been dismissed as a defendant in *MicroStrategy III. See MicroStrategy Inc. v. Lauricia,* Order, C.A. No. 00–985–A (August 25, 2000).

FLSA, Title VII, or the ADEA. MicroStrategy also alleged pendent state claims against plaintiff and plaintiff's counsel for civil conspiracy and violation of Virginia Code §§ 18.2–499 and –500 (combination or conspiracy to injure business reputation). This suit is currently in the discovery stage and has been consolidated with the instant suit, *MicroStrategy IV. See MicroStrategy Inc. v. Lauricia*, Order, C.A. No. 00–985–A (August 25, 2000).

The instant suit is the fourth lawsuit involving the plaintiff and MicroStrategy and is the only action brought by plaintiff. *See Lauricia v. MicroStrategy*, C.A. No. 00–990–A (filed June 16, 2000) ("*MicroStrategy IV*"). Although this action, as originally filed, did not include a claim for relief pursuant to FLSA, plaintiff has now sought leave to amend the complaint to add a cause of action based on retaliation in violation of FLSA. This motion has been argued and is under advisement. This memorandum opinion proceeds on the assumption that the motion will be granted and considers whether plaintiff is compelled to arbitrate plaintiff's claims of retaliation under Title VII, ADEA, and FLSA.

MicroStrategy has pursued discovery in each of these cases. Specifically, MicroStrategy has (i) propounded one set of interrogatories, (ii) served plaintiff with one request for the production of documents, (iii) caused the issuance of four third party subpoenas directed to plaintiff's former employers, (iv) conducted one deposition of plaintiff, (v) filed a motion to depose plaintiff's counsel, (vi) obtained and executed a writ of possession to seize documents in the possession of plaintiff's attorney, and (vii) filed at least two motions to compel discovery responses.

Defendant now moves to dismiss plaintiff's complaint on the grounds that she is bound to arbitrate her claims, and that she has failed to exhaust her administrative remedies because the EEOC issued its right to sue letter prematurely and because the plaintiff failed to participate in conciliation.[3]

## II

### A. Agreement to Arbitrate

██ The threshold question is whether the plaintiff's employment agreement with MicroStrategy compels her to arbitrate the claims she asserts here. In this regard, plaintiff signed an employment agreement, which states, in pertinent part, that

> Any controversy or claim arising out of or relating to this Employee Handbook, procedures delineated in it, or the employment relationship otherwise cognizable at law and that could be the subject of legal action, shall be settled by arbitration...."

Given the breadth of this arbitration provision, it is clear that plaintiff's claims in this suit fall within the scope of the arbitration provision.[4] The principal dispute is whether, as plaintiff contends, MicroStrategy has waived its right to seek arbitration based on its prosecution of the three separate lawsuits against plaintiff and plaintiff's attorney.

Settled principles are dispositive of this issue. A strong federal policy favors arbitration.[5] In light of this strong federal policy, a court must "not lightly infer the

---

**3.** Plaintiff seeks to strike defendant's memorandum in support of its motion to dismiss, on the ground that defendant failed to serve a proper copy of the memorandum on plaintiff. For the reasons stated from the bench during the hearing, this motion to strike is denied.

**4.** Plaintiff argues, unpersuasively, that arbitration is inappropriate because the principal remedy she seeks is reinstatement, whereas the arbitration provision is limited to controversies "cognizable at law." The short answer to plaintiff's argument is that she seeks both legal and equitable remedies and has made a demand for a jury. Additionally, the phrase "cognizable at law" should not be read as importing into an employment contract arcane distinctions between legal and equitable matters.

**5.** *See* Federal Arbitration Act, 9 U.S.C. § 1 *et seq.; American Recovery Corp. v. Computerized Thermal Imaging Inc.*, 96 F.3d 88, 95 (4th Cir.1996) (noting the "strong federal policy

circumstances constituting waiver," and the "key inquiry is whether the party opposing the stay has suffered any *actual prejudice*." *Id.* (emphasis added). In that regard, "neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration," although "delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Fraser v. Merrill Lynch Pierce, Fenner & Smith,* 817 F.2d 250, 252 (4th Cir.1987). Also significant is that the party opposing arbitration "bears a heavy burden of proving waiver." *American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 95 (4th Cir.1996) (hereinafter *"ARC")*(citing *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1412 (9th Cir.1990)).

■ Although the line of demarcation between waiver and the absence of waiver is not always clear, it is settled that merely initiating litigation, without more, does not effect a waiver. This is because the filing of a suit, standing alone, results in no actual prejudice to the party urging waiver. Thus, in *ARC,* the Fourth Circuit found no prejudice to the party opposing arbitration where the party seeking arbitration initiated two suits for declaratory judgment, but had obtained no discovery prior to the early dismissal of the suits. *See ARC,* 96 F.3d at 95–96. Similarly, in *Maxum Foundations, Inc. v. Salus Corp.,*

779 F.2d 974 (4th Cir.1985), the Fourth Circuit also found no prejudice where the party opposing arbitration was the only party who had conducted discovery. *Id.* at 982 (holding that no waiver occurred where the party opposing arbitration was actually aided rather than prejudiced by the discovery it initiated).

■ While the test for waiver is stringent, it is not insurmountable. When one party takes actions that compel the finding that requiring arbitration, thus staying the trial proceedings, would result in *actual* prejudice, a waiver of arbitration must be found. *See Fraser,* 817 F.2d at 252. Actual prejudice results when the party seeking to enforce an arbitration obligation engages in significant litigation activity inconsistent with an intent to arbitrate. For example, prejudice results from the discovery of matters unobtainable in arbitration and from the unnecessary delay or expense that results when an opponent delays invocation of its contractual right to arbitrate. *See ARC,* 96 F.3d at 95–96; *Maxum,* 779 F.2d 974; *Fraser,* 817 F.2d at 252; *see also Doctor's Associates Inc. v. Distajo,* 107 F.3d 126, 131 (2d Cir.1997).

■ Here, the record reflects that plaintiff has met her heavy burden of proving waiver. Thus, it appears that MicroStrategy has been remarkably aggressive in pursuing litigation against plaintiff,[6] resulting in the discovery of information unobtainable in arbitration [7] and causing unnecessary delay and expense.[8] Three specific

---

favoring arbitration"). Accordingly, a party waives its right to demand arbitration only "by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *ARC,* 96 F.3d at 95; *see also Fraser v. Merrill Lynch Pierce, Fenner & Smith,* 817 F.2d 250, (4th Cir.1987) (stating that where a person "engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced.").

6. Indicative of MicroStrategy's aggressiveness is that it took the unusual step of naming plaintiff's lawyer as a defendant in all three suits.

7. The arbitration agreement states that "[t]he taking of depositions, except to perpetuate the testimony of unavailable witnesses, shall not be permitted in the arbitration proceedings."

8. While not raised in the briefs by either party, the Second Circuit has held that when prior litigation is the basis of waiver, waiver occurs only where the parties previously "engage[d] in litigation on the merits of the issues" raised in the present suit. *See Doctor's Assoc.,* 107 F.3d at 131 (finding that litigation of prior eviction actions did not constitute waiver of arbitration clause *vis a vis* evicted plaintiffs). Because each of the plaintiff's current claims were the legal subject matter of declaratory judgment actions in *MicroStrategy I* (declaratory judgment that MicroStrategy had not violated FLSA) and *MicroStrategy III* (declaratory judgment that MicroStrategy

instances of actual prejudice merit mention.

First, in *MicroStrategy I*, MicroStrategy deposed the plaintiff, an action not permitted under the arbitration agreement. During this deposition, which was ostensibly to be limited to the discovery of any MicroStrategy documents that plaintiff might have in her possession, MicroStrategy, nonetheless, sought and obtained information regarding plaintiff's discrimination complaint, including (i) her knowledge about employment practices, (ii) conversations she had with MicroStrategy attorneys, and (iii) the documents she used to prepare her complaint to the Equal Employment Opportunity Commission. While plaintiff was not asked directly about her EEOC complaint, MicroStrategy's questions, nonetheless, were such as to elicit responses that might aid its defense against plaintiff's claims in the instant case. Plaintiff, therefore, suffered actual prejudice.

Second, in *MicroStrategy II*,[9] MicroStrategy sought and obtained an order directing the Sheriff of Alexandria to seize documents from the office of Ms. Lauricia's attorney, some of which had been filed with the EEOC in support of her EEO claim.[10] *See MicroStrategy II*, Order, Alex. Cir.Ct. Chancery No. 000520 (April 27, 2000). This seizure occurred, and to the extent that a privilege was claimed, MicroStrategy was provided with a privilege log. *See MicroStrategy II*, Order, Alex. Cir.Ct. Chancery No. 000520 (July 18, 2000). No such seizure could have been sought or obtained in the context of an arbitration proceeding.

Third, MicroStrategy, in the suit at bar, successfully acquired, via a subpoena *duces tecum*, all documents pertaining to plaintiff from her previous four employers. *See MicroStrategy IV*, Order, C.A. No. 00–990–A (July 17, 2000). Again, this process would be unavailable to MicroStrategy in an arbitration proceeding.

In addition to these three distinct instances of prejudice, it is noteworthy that MicroStrategy has filed several discovery motions and requests for production in the various suits. While these efforts, standing alone, are insufficient to warrant a waiver of arbitration, they reflect, especially when taken as a whole, an intent inconsistent with an intent to arbitrate the claims.

Thus, in *MicroStrategy I*, MicroStrategy filed a motion to depose plaintiff's attorney, compel attendance at depositions and to produce documents, and, in the alternative, for sanctions.[11] MicroStrategy has also propounded interrogatories and served document discovery requests that delve deeply into the alleged violation of FLSA, Title VII, and the ADEA—the very legal matters at issue in this case—and then filed motions to compel their production of the interrogatory and document discovery.[12] Plaintiff has filed objections in its response to these requests.

---

had not violated Title VII and ADEA), it is appropriate for plaintiff to rely on these suits in her request for a waiver of arbitration.

**9.** Interestingly, *MicroStrategy II* is the only of the three lawsuits that does not relate to the discrimination or retaliation claims. Yet, even in that matter, MicroStrategy continued to seek and obtained discovery on these matters.

**10.** MicroStrategy filed a similar discovery motion in *MicroStrategy I*.

**11.** The Court denied MicroStrategy's motion for sanctions. The motion to compel was later withdrawn by MicroStrategy. *See MicroStrategy Inc. v. Convisser*, Order, C.A. No. 00–453–A (March 31, 2000).

**12.** For instance, defendants have requested that the plaintiff "IDENTIFY each person ... with whom YOU have had any COMMUNICATIONS regarding whether or not MICROSTRATEGY was in compliance with the Fair Labor Standards Act." *See* MicroStrategy Incorporated's First Set of Interrogatories to Respondent Betty J. Lauricia (uppercase in original to identify defined terms). The next interrogatory stated "describe in detail the COMMUNICATIONS YOU had with such PERSON, including, but not limited to, the verbatim COMMUNICATIONS, the IDENTITY of each person present during the COMMUNICATIONS, and when and where the COMMUNICATIONS took place." MicroStrategy then requested that plaintiff "[s]tate all facts upon which YOU base the contention

Significantly, MicroStrategy's vigorous pursuit of these matters has caused unnecessary delay and expense, and as the Second Circuit correctly held, these unnecessary effects support the conclusion that a party seeking arbitration has so "substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *ARC,* 96 F.3d at 95; *Doctor's Associates,* 107 F.3d at 131. For example, in response to notice by the plaintiff of her pending suit, MicroStrategy filed *MicroStrategy III* rather than make a timely demand for arbitration. By filing this action, MicroStrategy added additional expense and delayed resolution of this matter. Furthermore, while plaintiff has not substantively responded to the interrogatory and document production requests made in *MicroStrategy II,* it is under the constant threat of motions to compel and motions for sanction. To be sure, delay alone does not effect a waiver, and it is also true a "party seeking arbitration does not lose its contractual right by prudently pursuing discovery in the face of a court-ordered deadline," *ARC,* 96 F.3d at 96 (quoting *Maxum Founds. Inc. v. Salus Corp.,* 779 F.2d 974, 982 (4th Cir.1985)). Still, it is clear that the discovery requests made during *MicroStrategy I, II, III,* and *IV,* when viewed together, have undeniably caused actual prejudice to the plaintiff and warrant the conclusion that MicroStrategy has crossed the waiver line.

This conclusion finds firm support in the contrast between these facts and those at bar in *ARC* and *Maxum.* Unlike in *ARC* where no discovery was obtained prior to the dismissal of the declaratory judgment suits or in *Maxum* where the discovery obtained was a deposition conducted by the party opposing arbitration, in this case,

the party seeking arbitration—MicroStrategy—has obtained relevant discovery, unavailable in arbitration, on each of Ms. Lauricia's claims in the current suit. Furthermore, MicroStrategy has threatened to file additional motions to compel and motions for sanctions to discover material that would further prejudice plaintiff if arbitration is required. In sum, the plaintiff has satisfied her heavy burden of proving actual prejudice, and therefore, MicroStrategy has waived its right to invoke arbitration on these matters.

## B. *Failure to Exhaust*

On March 8, 2000, plaintiff filed a charge of discrimination with the EEOC in which she alleged that MicroStrategy discriminated against her on the basis of age and sex. On May 11, 2000, the EEOC issued a letter to the effect that it found reasonable cause to believe that MicroStrategy was in fact illegally retaliating against plaintiff and invited the parties to participate in informal conciliation efforts with the EEOC. On May 25, 2000, the EEOC determined (i) that conciliation efforts would not bear fruit and (ii) that it would not prosecute the case on the plaintiff's behalf. On that same day, the EEOC issued a right-to-sue letter.[13] On June 16, 2000, plaintiff filed the present suit, in which she alleges, *inter alia,* that MicroStrategy illegally retaliated against her in violation of Title VII and the ADEA. And, as stated above, plaintiff has moved to amend the complaint to add a cause of action based on violations of FLSA. Now, MicroStrategy seeks dismissal of the suit, alleging that there is no subject matter jurisdiction because plaintiff has failed to exhaust her administrative remedies. Specifically, MicroStrategy argues (i) that the EEOC erred by issuing the right-to-sue letter before 180 days had elapsed from the filing of the charge, and

... that MicroStrategy has not been in compliance with the requirements of [FLSA]." These same questions were asked again regarding the Title VII and ADEA claims.

13. On May 9, 2000, plaintiff filed a second charge with the EEOC, alleging retaliation based on MicroStrategy's decision to sue plaintiff and to place her on administrative leave. Presumably, the right to sue letter applies only to the retaliation claim.

(ii) that plaintiff, by rejecting the EEOC's conciliation efforts, circumvented the administrative process.[14]   Neither argument is persuasive.

### 1. Early Right–to–Sue Notices

■   With respect to the first argument, MicroStrategy contends that the "plain language" of Title VII requires the EEOC to wait 180 days before issuing a right–to–sue letter.   This argument misreads the statute.   Title VII provides, in pertinent part, as follows:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, *or* if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, *whichever is later*, the Commission has not filed a civil action under this section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the re-

spondent named in the charge ... by the person claiming to be aggrieved....
42 U.S.C. § 2000e–5(f)(1) (emphasis added).   This language, given its plain meaning, describes the circumstances where the EEOC *must* issue a right-to-sue letter, namely (1) when the claim is dismissed by the EEOC or (2) at the end of 180 days (or at the end of any period of reference under (c) or (d), if longer than 180 days) if by then the EEOC has not filed suit or entered into a conciliation agreement.   Significantly, the plain language establishes that in circumstances (1) and (2), a duty to issue a right-to-sue-letter is mandatory; it *must* issue.   But nothing in the statutory language addresses or limits whether the EEOC may issue a right-to-sue letter prior to the expiration of the 180–day period.   Had Congress intended such a result, they could easily have done so explicitly, by stating that right-to-sue letters will issue *only* in the circumstances prescribed, namely dismissal of the administrative complaint or expiration of the 180–day period.

Notwithstanding the statute's plain language, the circuits are split over this issue.[15]   The Fourth Circuit, however, has not yet squarely addressed this statutory dispute.[16]   Based on a review of the rele-

---

**14.**   The record does not reflect whether the right-to-sue letter issued by the EEOC applies to plaintiff's claim of retaliation in violation of FLSA.

**15.**   The circuit split is to whether the 180 day period is (i) a statutory waiting period, during which the EEOC has sole jurisdiction over a claim unless it dismisses the claim, *see Martini v. Federal Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1347 (D.C.Cir.1999), or (ii) a statutory outer-limit, but not a statutory waiting period, *see Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1062–63 (11th Cir.1994); *Saulsbury v. Wismer and Becker, Inc.*, 644 F.2d 1251, 1256–57 (9th Cir.1980).   The D.C. Circuit concluded that the EEOC policy of issuing right to sue letters, when it determined that it would not be able to complete the investigation before the expiration of the 180–day period, "impermissibly allows the EEOC to relax its aggregate effort to comply with its statutory duty to investigate every charge filed." *Martini*, 178 F.3d at 1347.   On the other hand, the Ninth and Eleventh Circuits note that the statute, on its face, creates an absolute right to receive a right to sue letter at the

completion of 180 days, so that a claimant need not languish in potentially endless bureaucratic proceedings.   *See Sims*, 22 F.3d at 1063.   Occasionally, the EEOC will determine that it will not be able to resolve a case within 180 days, in which case "no legitimate purpose is served by facilitating delay." *Sims*, 22 F.3d at 1063.

**16.**   Two district courts in the Fourth Circuit have discussed this issue.   MicroStrategy chiefly relies on *Loney v. Carr–Lowrey Glass Company*, 458 F.Supp. 1080 (D.Md.1978).   There, the district court determined that an EEOC policy violated Title VII's intent, where that policy allowed the EEOC to issue a Notice of Right to Sue prior to the expiration of 180 days, provided the EEOC determined that "it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge." *Id.* at 1081 n. 2 (quoting 29 C.F.R. § 1601.28(a)(2)).   In *Thomas v. Bet Sound–Stage Restaurant*, 61 F.Supp.2d 448, 458–59 (D.Md.1999), the district court reached the opposite conclusion.

vant case law, it appears that the view of the Ninth and the Eleventh Circuits best comports with the statute's plain language. This result finds further support in the purpose of § 2000e–5, which ensures that a claim will not languish in the EEOC for months or years before the complainant may sue. Significantly, this statutory purpose does not require that a lawsuit must await the passage of 180 days in any and all events, including a case where, as here, the EEOC completes its inquiry prior to the expiration of the 180 days. Also worth noting is that the circuit split rests in part on the concern, not present in this case, that permitting the issuance of a right-to-sue letter prior to 180 days allows the EEOC to "relax its aggregate effort to comply with its statutory duty to investigate every charge filed." *See Martini v. Federal Nat. Mort. Assoc.,* 178 F.3d 1336, 1347 (D.C.Cir.1999). In this case, the EEOC completed its investigation and determined that reasonable cause exists before it issued the right-to-sue letter. In sum, neither Title VII's plain language, nor its plain purpose preclude the EEOC from issuing the right-to-sue letter prior to the end of the 180 day period. There is, therefore, no lack of subject matter jurisdiction over this suit.

### 2. *Participation in Conciliation*

MicroStrategy next argues that plaintiff's claim should be denied because she refused to participate in the conciliation process. This argument is now moot as these proceedings were stayed and the parties ordered to participate in conciliation with the EEOC. *See MicroStrategy IV,* Order, C.A. No. 00–990–A (August). The parties complied with the order, but the effort, unfortunately, was unsuccessful.

■ Second, even without the court-ordered conciliation, MicroStrategy's argument remains unpersuasive as the statute imposes no duty on the complainant to engage in conciliation. MicroStrategy is correct that a complainant has a duty to cooperate with the administrative investigation by providing the relevant facts of her claim to the relevant agency.[17] But this statutory duty does not include a duty to conciliate and, therefore, is not implicated here. Moreover, the record reflects that plaintiff fulfilled this obligation. The only conciliation duty imposed by the statute is a duty on the EEOC to attempt conciliation. *See* § 2000e–5(b). Accordingly, it is no surprise that MicroStrategy cites only cases in which a claim brought *by the EEOC* was dismissed because the *EEOC* failed to seek conciliation.[18] Here, the EEOC contacted both parties, offered informal conciliation, and, based on the complainant's lack of interest in conciliation, determined that conciliation would be "futile or non-productive." *See* EEOC Letter dated May 25, 2000. In light of the relationship between plaintiff and MicroStrategy up until this time, the EEOC's decision in this regard was plainly not

17. *See, e.g., Wilson v. Pena,* 79 F.3d 154, 164– 65 (D.C.Cir.1996) ("If a complainant forces an agency to dismiss or cancel the complaint by failing to provide sufficient information to enable the agency to investigate the claim, he may not file a judicial suit. Even though the dismissal is 'final action,' which would normally trigger the right to sue under § 717(c), the suit will be barred for failure to exhaust administrative remedies."); *Woodard v. Lehman,* 717 F.2d 909, 914 (4th Cir.1983) (noting that the claimants had failed to cooperate with the investigation). "The purpose of the doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Wilson,* 79 F.3d at 165.

18. *See EEOC v. Firestone Tire and Rubber Co.,* 366 F.Supp. 273, 278 (D.Md.1973) (noting that Title VII required the EEOC to provide "an opportunity for conciliation"); *EEOC v. Eagle Iron Works.,* 424 F.Supp. 240, 244 (S.D.Iowa 1976) ("The commission's statutory duty to attempt conciliation is among its most essential functions."); *EEOC v. Westvaco,* 372 F.Supp. 985, 992–93 (D.Md.1974); *Patterson v. American Tobacco Co.,* 535 F.2d 257, 271– 72 (4th Cir.1976) ("[A] suit brought by the commission before attempting conciliation is premature.").

unreasonable. Furthermore, because the parties have now attempted (and failed) in their conciliation efforts, MicroStrategy's motion to dismiss on this ground should be denied.

### III

For all the reasons stated above, MicroStrategy's motion to dismiss is **DENIED.**

The clerk is directed to forward this Memorandum Opinion to all counsel of record.