# CIRCUIT COURT OF FAIRFAX COUNTY

Ahern et al.

v.

Toll Brothers, Inc.,
and Toll Land XV, L.P.

February 16, 2001

Case No. (Law) 187917

By Judge Marcus D. Williams

This cause came to be heard on January 5, 2001, upon Defendants Toll Brothers, Inc., and Toll Land XV, L.P.s' Motion to Compel Arbitration. For the reasons articulated below, the Defendants' motion is granted.

*Background*

Plaintiffs in this case, Mr. and Mrs. Ahern, are the owners of a home allegedly clad with a synthetic stucco material known as EIFS. Defendants are engaged in the business of building and selling new homes. Plaintiffs refer to the Defendants collectively as "Toll Brothers" in their pleadings, motions, and briefs; the exact relationship between the Defendants is not developed in the record at this time. In any event, Plaintiffs allege that "Toll Brothers" built their home.

Plaintiffs' Motion for Judgment alleges that the EIFS on their home allowed excessive moisture intrusion, resulting in water damage, rotting walls, and other structural damage, leading to a decrease in the value of the home. The Motion for Judgment contains seven counts:

Count I: Fraud,
Count II: Constructive Fraud,
Count III: Breach of Contract,
Count IV: Breach of Warranty,
Count V: Violation of the Virginia Consumer Protection Act,
Count VI: False Advertising, and
Count VII: Negligence Per Se.

With the exception of Count IV, which is brought against Toll Brothers, Inc., only, all counts are brought against both Defendants.

In purchasing their home, Plaintiffs entered into two contracts, an "Agreement of Sale" and a "Limited Warranty." The parties to the Agreement of Sale are the Plaintiffs and Toll Land XV, L.P. The parties to the Limited Warranty are the Plaintiffs and Toll Brothers, Inc. Both contracts contain arbitration provisions, although the two provisions differ in language.

The arbitration clause in the Agreement of Sale between Toll Land XV, Limited Partnership, and Plaintiffs, reads as follows:

> 11. ARBITRATION: Buyer hereby agrees that *any and all disputes arising out of this Agreement, the Home Warranty, or the construction or condition of the Premises shall be resolved by binding arbitration* in accordance with the rules and procedures of the American Arbitration Association or its successor (or an equivalent organization selected by Seller). In addition, Buyer agrees that Buyer may not initiate any arbitration proceeding for any claim arising out of the Agreement or the Home Warranty or relating to the construction or condition of the Premises unless and until Buyer has first given Seller specific written notice ... and given Seller a reasonable opportunity after such notice to cure any default, including the repair of the Premises, in accordance with the Home Warranty. The provisions of this paragraph shall survive settlement.

Agreement of Sale at 2 (emphasis added).

The arbitration provision in the Limited Warranty reads in substantive part:

> *Binding Arbitration will be the sole remedy for resolving disputes between YOU and US that arise from or relate to this Limited Warranty.* ... Disputes subject to binding arbitration include but are not limited to:

A. We do not agree with you that a deficiency or defined structural element failure is covered by this limited warranty;

B. We do not correct a deficiency or defined structural element failure to your satisfaction or in a manner that you believe this limited warranty requires;

C. We fail to respond to your written notice of a deficiency or defined structural element failure;

D. Disputes related to common elements;

E. Alleged breach of this limited warranty; .

F. Alleged violations of consumer protection, unfair trade practice, or other statutes;

G. Disputes concerning the issues that should be submitted to binding arbitration;

H. Disputes concerning the timeliness of binding arbitration requests.

Any binding arbitration proceeding will be conducted by an independent arbitration organization designated by the warranty program administrator. The rules and procedures followed will be those of the designated arbitration organization. A copy of the applicable rules and procedures will be delivered to you upon request.

Limited Warranty at 7-8 (emphasis added). Page 1 of the Limited Warranty defines "we," "us," and "our" as Toll Brothers, Inc., and "you" and "your" as the homeowners.

*Analysis*

*Whether the Respective Provisions for Arbitration Are Sufficiently Broad So As To Require the Arbitration of All Claims Against Toll Land XV, L.P., and Toll Brothers, Inc.*

By adopting the Uniform Arbitration Act (Va. Code § 8.01-581.01 *et seq.*), Virginia makes valid and enforceable any written agreement to arbitrate any controversy thereafter arising between parties, except upon such grounds as exist at law or in equity for the revocation of any contract. In all material respects, the Virginia Uniform Arbitration Act is similar to the Federal Arbitration Act, an earlier federal law, which has been the subject of numerous federal and state court decisions. See *Moses H. Cone Memorial Hosp. v. Mercury Const. Co.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983).

Arbitration agreements containing the language "arising out of and relating to this agreement or breach hereof" are broad arbitration clauses that encompass contract-generated or contract-related disputes between parties however labeled. See *McMullin v. Union Land & Management Co.*, 242 Va. 337, 341, 410 S.E.2d 636 (1991).

However, arbitration provisions containing the language "arising hereunder" or "arising out of" are narrow arbitration clauses. *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983). When "an arbitration clause refers to disputes or controversies 'under' or 'arising out of' the contract, *arbitration is restricted to 'disputes and controversies relating to the interpretation of the contract and matters of performance'.*" *Id.* (quoting *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961) (emphasis added).

Accordingly, narrow arbitration clauses require only the arbitration of claims arising under the contract. Contrarily, broad arbitration clauses do not limit arbitration to the literal interpretation or performance of the contract, but embrace every dispute between the parties that has a significant relationship to the contract regardless of the label attached to the dispute. See *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (quoting *J. J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988)). In determining whether an arbitration clause encompasses particular disputes, a court must "determine whether the factual allegations underlying a claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." *Id.*

*The Limited Warranty Arbitration Clause*

The two arbitration clauses in the instant case differ in scope. The arbitration provision in the Limited Warranty is of the broader variety stating that "binding arbitration will be the sole remedy for resolving disputes between [the homebuyer(s)] and [Toll Brothers, Inc.] *that arise from or relate to this Limited Warranty.*" Limited Warranty at 7. (emphasis added). Furthermore, the Limited Warranty provides a list of disputes that are subject to arbitration, which include but is not limited to claims and any "disputes concerning the issues that should be submitted to binding arbitration." *Id.* Even if it were not clear that a particular dispute should be submitted to arbitration, that very issue would be one for the arbitrator to decide, not the Court.

Each claim or dispute raised by the Plaintiffs against Defendant Toll Brothers, Inc., must be arbitrated by virtue of the broad arbitration clause language in the Limited Warranty.

*The Agreement of Sale Arbitration Clause*

The Agreement of Sale arbitration clause, though different, is also a relatively broad arbitration provision. This clause requires, *inter alia*, arbitration of disputes "arising out of this Agreement." Agreement of Sale at 11. Standing alone, "arising out of" would limit the scope of arbitration to any disputes involving the interpretation or performance of the contract. However, the clause goes further by encompassing disputes "arising out of . . . the *construction or condition* of the Premises." *Id.* (emphasis supplied).[1] Accordingly, the scope of this arbitration clause reaches beyond disputes pertaining to the interpretation and performance of the Agreement of Sale and encompasses disputes arising out of the construction or condition of the house. Indeed, this arbitration clause is sufficiently broad to include fraud, constructive fraud, breach of warranty, violation of the Virginia Consumer Protection Act, false advertising, negligence *per se*, as well as the breach of contract claim.

It is clear that the heart of Plaintiffs' claims under the fraud and constructive fraud counts are disputes arising out of the *construction or condition* of their home. Plaintiffs allege that they were fraudulently induced into entering into the contract by Defendants' representations that the house would be constructed with "real stucco." See Motion for Judgment, ¶¶ 26, 28, and 36.

The Motion for Judgment reads in part:

26. At no time prior to their purchase of, or closing on, their home were Mr. and Mrs. Ahern informed that they were receiving anything other than real stucco. At no time were Mr. and Mrs. Ahern informed about the numerous problems regularly associated with EIFS. Had they been told that they were not receiving real stucco, Mr. and Mrs. Ahern would not have purchased the home. . . .

28. Compounding its egregious behavior in deceiving Mr. and Mrs. Ahern about the product they were receiving, Toll Brothers

---

[1] That clause states that "Buyer hereby agrees that any and all disputes arising out of this Agreement, the Home Warranty, or the construction or condition of the Premises shall be resolved by binding arbitration."

willfully, wantonly, and knowingly ignored the manufacturer's usual specifications when constructing Mr. and Mrs. Ahern's home with EIFS. Moreover, upon information and belief, Toll Brothers has engaged in a pattern and practice of these activities. . . .

36. Toll Brothers intended that Mr. and Mrs. Ahern, as potential purchasers, act or rely on its misrepresentations, inducing them to enter into a contract to purchase, and close on, the Property. Toll Brothers fraudulently induced Mr. and Mrs. Ahern to enter into the Agreement of Sale, and to close on their Property, by representing that the house they were purchasing was constructed with stucco.

Plaintiffs allege that they were further defrauded because Defendants failed to reveal that the home was constructed with EIFS not stucco. See Motion for Judgment, ¶¶ 33, 42, and 54.

The Motion for Judgment further reads:

33. After moving into the Property on or about April 28, 1999, Mr. and Mrs. Ahern experienced problems with the Property as a consequence of Toll Brothers' use of EIFS. Toll Brothers did not reveal that it constructed their home with EIFS. To the contrary, Toll Brothers expressly represented that construction would include "stucco." . . . .

42. Among the duties of Toll Brothers was to make accurate representations and disclosures regarding the construction and condition of the Property. . . .

54. After the date of the Agreement of Sale and closing, the Property experienced damage, including major structural defects, as a consequence of the facade's being constructed of EIFS.

Motion for Judgment at ¶¶ 26, 28, 33, 36, 42, and 54.

Similarly, the Virginia Consumer Protection Act claim is a dispute arising out of the construction and condition of the home. In this count, Plaintiffs incorporate all prior paragraphs of the Motion for Judgment including allegations about the condition and construction of the home as well as additional allegations concerning the misrepresentation of goods and services that allegedly constitutes a violation of the Virginia Consumer Protection Act. Notwithstanding the additional elements alleged, this claim still arises out of the *construction or condition* of the premises in question.

In order to recover under the false advertising count, Plaintiffs must not only prove a violation of Va. Code § 18.2-216, but also they must show that

they suffered a loss as a result of that violation. See *Henry v. R. K. Chevrolet*, 219 Va. 1011, 1013, 254 S.E.2d 66 (1979). Again, the alleged losses suffered by the Plaintiff arise out of the *condition* of the house in question.

In the same manner, Plaintiffs' claim of negligence *per se* must also be arbitrated. Plaintiffs' allegations are based wholly on violations of the Virginia Statewide Building Code, 1993 edition. Again, these are claims arising out of the construction of the premises.

Lastly, the breach of contract and breach of warranty claims clearly arise out of the agreement. Counsel for Plaintiffs conceded at oral argument that the breach of contract count is against both Toll Brothers, Inc., and Toll Land XV, L.P. If both entities are parties to the agreement and subject to liabilities thereon, then both entities are also parties to the arbitration clause.

### *Whether the Defendants Have Waived Arbitration by Responding to This Action.*

The Plaintiffs contend that Defendants have waived their right to arbitrate by choosing to defend this case on the merits. They argue that the Defendants' conduct has been dilatory and inconsistent with its present motion to compel arbitration. Plaintiffs cite the fact that Defendants filed their demurrer seeking to dismiss this action referencing only the Rules of the Virginia Supreme Court. The Defendants later filed a motion craving oyer and propounded discovery requests upon the Plaintiffs. Plaintiffs urge the Court to find that the course of action taken by the Defendants constitutes a waiver of its right to arbitrate. I decline to make such a finding.

A litigant may waive its right to arbitrate by utilizing the litigation machinery in a way that will cause prejudice to the party opposing arbitration if it is later permitted. See *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985). Thus, the dispositive question for the Court is whether the party opposing waiver, here the Plaintiffs, has suffered actual prejudice. See 779 F.2d at 982.

"Although the line of demarcation between waiver and the absence of waiver is not always clear, it is settled that merely initiating litigation, without more, does not effect a waiver." *Lauricia v. MicroStrategy, Inc.*, 114 F. Supp. 2d 489, 492 (E.D. Va. 2000). Additionally, "neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more to establish waiver of arbitration." *Fraser v. Merrill Lynch Pierce, Fenner & Smith*, 817 F.2d 250, 252 (4th Cir. 1987) (citing *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329 (4th Cir. 1971)). However, delay and the extent of trial-oriented activity by the party seeking a stay have been found to be material

factors in assessing actual prejudice. See *id*. As the Court in Fraser noted, "where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." 817 F.2d at 252 (quoting *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156 (5th Cir. 1986)).

In that case, the defendant had filed an answer to the original complaint and then asserted a counterclaim seeking positive relief from the Court. See 817 F.2d at 251. Additionally, defendant "filed two motions in limine, one motion for partial summary judgment, and three motions to dismiss. . . ." *Id*. The Court found that such extensive pretrial activities on the part of defendant rose to the level of a waiver of the right to arbitrate because the Plaintiff had suffered actual prejudice. See *id*.

The conduct of the Defendants in the instant case has not caused actual prejudice to the Plaintiffs. The facts do not suggest that the Defendants have unnecessarily delayed this matter. The Defendants have not filed an answer or a counterclaim seeking positive relief from the court. The Defendants did file a demurrer and a motion craving oyer, but neither went to the merits of this action. In fact, as Defendants state in their reply brief, the motion craving oyer was necessary to obtain the very documents that contain the arbitration clauses now at issue. Additionally, Plaintiffs have not been prejudiced by the Defendants' preliminary discovery activities. The Defendants have not used the machinery of litigation in a way that has caused Plaintiffs actual prejudice. Accordingly, Defendants have not waived their right to arbitrate under the Agreement of Sale or Limited Warranty.

### *Whether Plaintiffs' Claim of Fraud in the Inducement of the Agreement Must Be Heard by the Court Before It Can Be Referred to Arbitration.*

Plaintiffs maintain that they are entitled to rescind the Agreement of Sale if they prove that the Defendants fraudulently induced the Plaintiff to enter into the contract. Plaintiffs argue that the Agreement of Sale is subject to rescission based upon fraud. Thus, Plaintiffs cannot be bound by any terms of the agreement including the arbitration clause, and limitations of warranties. Plaintiffs contend that proof of fraud in the inducement would make the agreement subject to rescission at their election. *George Robberecht Seafood, Inc. v. Maitland Brothers Co.*, 220 Va. 109, 111, 255 S.E.2d 682 (1979). While fraud, if proven, would permit rescission of the agreement, the Court

did not address the question of whether an arbitration clause would be rendered a nullity upon a claim of fraud in the inducement. However, it would appear that the arbitration clause would remain enforceable even where there are claims for fraud in the inducement.

Va. Code § 89.01-581.01 of the Virginia Uniform Arbitration Act provides that "[A] written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds at law or in equity for the revocation of any contract." While no Virginia case has addressed the interpretation to be given to this language in our statute, similar language in the Federal Arbitration Act, 9 U.S.C. §§ 1-14 (1982), has been interpreted by the federal courts and is persuasive authority.

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967), the central issue before the United States Supreme Court was whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court or whether the matter is to be referred to the arbitrators. See 388 U.S. at 402. In reviewing language strikingly similar to the Federal Arbitration Act,[2] the Court said that the claim of fraud in the inducement of the *arbitration clause itself*, an issue that goes to the making of the agreement to arbitrate, is one for the court to decide. And the Court further noted that the statutory language did not permit a court to consider claims of fraud in the inducement of the contract generally. See 388 U.S. at 403.

Similarly, Va. Code § 8.01-581.01 provides that a written arbitration agreement — as opposed to the entire agreement — is valid and irrevocable except upon such grounds as exist at law or equity. Therefore, the only issue of fraud the court would decide would be whether the arbitration clause itself was induced by fraud. Such an allegation is not made in this case. The arbitration clause here is therefore enforceable.

## Conclusion

The scope of the arbitration clauses in the Agreement of Sale and in the Limited Warranty are broad enough to cover all of Plaintiffs' claims against both of the Defendants and would require their arbitration. By simply defending themselves by filing a demurrer, motion *craving oyer*, and limited

---

[2] The only differences between the Virginia and federal statute with regard to the validity of arbitration were the use of the word "save" in the federal statute and "except" in the Virginia statute.

discovery, the Defendants have not waived their right to require arbitration of their disputes with the Plaintiffs. The allegation of fraud in the inducement of the Agreement of Sale and Limited Warranty are matters for the arbitrators to decide.